UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BENJAMIN HAWKINS, ET AL.                    CIVIL ACTION

VERSUS                                       NO. 14-1944

AETNA LIFE INSURANCE CO.                     SECTION A(1)

## ORDER AND REASONS

The following cross motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 22)** filed by plaintiffs Benjamin Hawkins, Tanesia Hawkins, Tyra Stampley, and Tamara Hawkins; **Motion for Summary Judgment (Rec. Doc. 21)** filed by defendant Aetna Life Insurance Co. The motions, submitted to the Court on November 18, 2015, are before the Court on the briefs without oral argument.

**I.     Background**

Plaintiffs filed this action seeking benefits under a group policy of life insurance governed by ERISA. Plaintiffs are the descendants of Ms. Laura Hawkins. The policy at issue was one that Ms. Hawkins had obtained through her former employer, Tenneco Oil Processing & Marketing Group. Plaintiffs argue that they are the legal beneficiaries under the policy and that they are entitled to benefits. Plaintiffs seek death benefits, with interest, attorney's fees and costs. Aetna argues that Plaintiffs are not entitled to benefits, that the action is time-barred, and that administrative remedies were not exhausted.

Ms. Hawkins worked her last day at Tenneco and began receiving long-term disability benefits on July 31, 1982. On May 12, 1983 Aetna approved a Premium Waiver for Ms. Hawkins, and her life insurance was "extended" pursuant to the Plan's Permanent and Total Disability Feature. (AR000107). Under this provision, life insurance may be extended if Aetna

determines that the insured is permanently and totally disabled. When such a determination is made, the insured need not make any further contributions in order to continue coverage and no premium payments are required from the employer. (*Id.*). The terms of the Plan are clear, however, in that a determination of permanent and total disability does not irrevocably vest the insured with the extension benefit. In fact, the Plan specifically provides that the extension period will cease if Aetna requests "proof that you are still permanently and totally disabled, if proof is not given within 31 days of that date." (AR000108). Thus, in order to keep the coverage in place, the insured must timely comply with Aetna's requests for updated proof of a continuing permanent and total disability.

Aetna's computer system contains an entry for June 13, 2003, with the description "1st REQUEST APS," and an entry for September 11, 2003, with the description "2nd REQUEST APS." (AR000022). The next entry is for November 10, 2003, and it states "PW TERM NOTICE." The latter entry seemingly refers to a November 10, 2003, termination notice that Aetna sent to Ms. Hawkins via certified mail. (AR000083-AR000084). The notice explained that her group life policy had been terminated effective November 10, 2003, because Ms. Hawkins had failed to provide continued proof of permanent and total disability when Aetna requested it via the June 13th and September 11th letters. (AR000083). The letter informed Ms. Hawkins of the possibility of converting her terminated group coverage to an individual policy. It is undisputed that Ms. Hawkins received the termination notice on November 26, 2003, because Aeta retained (and has produced in this litigation) a copy of the termination notice as well as the postal return receipt with Ms. Hawkins' signature. (AR000084). Aetna did not, however, retain copies of the June 13th and September 11th letters, and Aetna's computer entries do not reflect that these letters were

sent via certified mail return receipt requested. Thus, Aeta cannot prove that it actually sent the two requests to Ms. Hawkins before it terminated her coverage on November 10, 2003.

Ms. Hawkins did not obtain an individual policy after termination. And she did not administratively appeal Aetna's November 10, 2003 decision to terminate the permanent and total disability extension that she had previously received. Ms. Hawkins passed away on August 19, 2013, nearly ten years after she received the termination notice. Plaintiffs nonetheless made a claim for life insurance benefits under the group policy and Aetna denied the claim, advising them that Ms. Hawkins was not covered under the policy when she died. (AR000162).

Plaintiffs' argument before this Court is that once granted, the coverage extension could only terminate in accordance with the express terms of the Plan. Plaintiffs recognize that non-compliance with the Aeta's requests for continuing proof of disability would be grounds for termination under the Plan. Plaintiffs have no evidence from which one could circumstantially infer that Aetna did not send and that Ms. Hawkins did not receive, the June 6th and September 11th letters.[1] But Plaintiffs' contend that because Aetna cannot now produce the letters, it cannot prove that it terminated coverage in accordance with the terms of the Plan. Thus, according to Plaintiffs, coverage remains in place.

## II.     Discussion

The Court is persuaded that under either de novo review or review for an abuse of discretion the result of Plaintiffs' challenge to Aetna's decision to deny benefits is the same. The Court will therefore conduct the more rigorous de novo review of the denial decision.[2] The

---

[1] In fact, given that Ms. Hawkins did not challenge the November 10, 2003 termination notice that explicitly referenced the two letters, the most logical inference would be that Aetna sent and Ms. Hawkins received the June 6th and September 11th letters.

[2] Plaintiffs' arguments regarding plan ambiguities and tenets of contractual interpretation are off-point because the terms of the Plan are not ambiguous and they are not in dispute.

Court's research revealed no decisions that were particularly helpful to reviewing the decision in this case.

Besides asserting that its decision was not an abuse of discretion under the Plan, Aetna's arguments in defense of Plaintiffs' claims are prescription and failure to exhaust.[3] But what Aetna's defenses suggest, without having identified articulated it as such, is that Plaintiffs' claim for benefits is actually an attempt to assert greater rights relative to the Plan than what the insured herself would have been able to do. Regarding the June 6th and September 11th letters, only two scenarios are possible—neither of which can be proven definitely today. First, if Aetna sent the letters to Ms. Hawkins as it claims to have done, then the policy terminated in 2003, there was no coverage in place when Ms. Hawkins died, and Plaintiffs are entitled to nothing in this lawsuit. This scenario, where the letters were sent and coverage was properly terminated, is not affected by what Aetna can actually prove today about its actions in 2003. But by filing suit and placing the burden of proof on Aetna,[4] Plaintiffs are attempting—if scenario #1 is the correct one—to obtain benefits under a defunct policy that even Ms. Hawkins would have had no legal right to resurrect had she decided to do so herself once she declined to timely challenge the termination notice or to convert her group coverage to an individual policy.

The second possible scenario is that Aetna did not send the June 6th and September 11th letters in accordance with the Plan. If this is what in fact occurred, then coverage was not terminated in accordance with the Plan. But the fallacy of Plaintiffs' argument is their failure to recognize that even if coverage was not *properly* terminated in November 2003, it was

---

[3] Plaintiffs actually did exhaust administratively the denial of their claim for benefits. Aetna's exhaustion argument therefore refers to Ms. Hawkins' failure to appeal in 2003 when her coverage was terminated.

[4] Generally, the ERISA plaintiff has the burden of proving the eligibility for benefits. *See Estate of Thompson v. Sun Life Assur. Co.*, 603 F. Supp. 2d 898, 907-08 (N.D. Tex. Dec. 10, 2008) (citing *Critchlow v. First UNUM Life Ins. Co.*, 378 F.3d 246, 256 (2d Cir. 2004)). This case does, however, present a unique set for factual circumstances.

nonetheless terminated and the party who had to timely appeal that decision was Ms. Hawkins herself, who undisputedly received the termination letter from Aetna in November 2003. For whatever reason, whether intentionally or through inadvertence, Ms. Hawkins did not challenge the termination of benefits. Even if Ms. Hawkins had not known about the termination and had discovered it years later at some point before she died, she would have had no legal right to challenge the termination in light of the conclusive proof that she received the termination notice and failed to timely act. Plaintiffs have no greater rights to challenge the termination decision now, nearly ten years later, than what Ms. Hawkins would have had herself. For this reason, the Court finds no merit to the contention that coverage must be deemed to exist merely because Aetna cannot prove to Plaintiffs, individuals with whom Aetna had no relationship, that it properly concluded its business with their mother a decade ago.

In sum, because Aetna undisputedly notified Ms. Hawkins that her coverage was terminated, and because Ms. Hawkins did not challenge that decision, coverage terminated on November 10, 2003. Aetna is entitled to judgment as a matter of law.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 22)** filed by plaintiffs Benjamin Hawkins, Tanesia Hawkins, Tyra Stampley, and Tamara Hawkins is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 21)** filed by defendant Aetna Life Insurance Co. is **GRANTED**. Judgment will issue in favor of Aetna, dismissing Plaintiffs' complaint with prejudice.

January 19, 2016

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE